# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

CELESTINO MARTINEZ and
CELIA MARTINEZ,

      Plaintiffs,

v.                                CIV 00-1760 WJ/DJS

BERNALILLO COUNTY,
SERGEANT ULRICH, and
DEPUTY KEY, Bernalillo County
Sheriff Officers,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment (Docket No. 21).

## PROCEDURAL HISTORY

Plaintiffs filed a Complaint in the State of New Mexico Second Judicial District Court on November 27, 2000. The Complaint alleges that Officers of the Bernalillo County Sheriff's Department unlawfully entered Plaintiffs' property without a warrant in violation of the Fourth Amendment to the United States Constitution, unlawfully detained Plaintiffs without a warrant or probable cause in violation of the Fourth Amendment, and committed various torts as defined in the New Mexico Tort Claims Act, N.M. Stat. Ann. 1978 § 41-4-12. Defendants Key and Ulrich are sued in their individual capacities only. Defendants removed the case to this Court on December 15, 2000.

After discovery, Defendants filed the motion that is the subject of this opinion. Defendants' Motion for Summary Judgment urges that Defendants Key and Ulrich are entitled to judgment on Plaintiffs' Section 1983 claims because (1) Plaintiff has failed to demonstrate that Defendants Ulrich and Key acted in an unconstitutional manner because Defendants did not conduct an illegal search, did not unlawfully arrest Plaintiffs, and did not use excessive force; and (2) Defendants Key and Ulrich are entitled to qualified immunity. Defendants' Motion for Summary Judgment states that Defendant Bernalillo County is entitled to judgment on Plaintiffs' Section 1983 claims because Plaintiff has failed to demonstrate that the County has a policy or custom that violated Plaintiffs' constitutional rights. Finally, Defendants' Motion for Summary Judgment maintains that all Defendants are entitled to judgment on Plaintiffs' claims under the New Mexico Tort Claims Act because Plaintiffs cannot prove the elements of any of these claims.

**FACTUAL BACKGROUND**

Plaintiffs Celestino and Celia Martinez were 75 and 72 years old, respectively, at the time they filed their Complaint, and are residents of Bernalillo County. Defendants are the County of Bernalillo and two Bernalillo County Sheriff's Department law enforcement officers, Sergeant Ulrich and Deputy Key.

According to Plaintiffs, they own a home and live in the South Valley area of Bernalillo County. There is a separate residence on their property that they had rented to a Mr. Martin. Mr. Martin became delinquent on his rent, and the Martinezes gave him an eviction notice on July 13, 2000. Mr. Martin left the rental unit and left behind a pop-up camper in the driveway of the rental home.

The Martinezes moved the camper into a garage. Mr. Martin attempted to retrieve his camper on September 14, 2000. The Martinezes would not allow him to have the camper because they believed he still owed them $630 dollars in back rent. They told him he could have his camper when he paid the money. The next day, September 15, 2000, a relative of Mr. Martin's, Ms. Martin, arrived with two deputies from the Bernalillo County Sheriff's Department and told the Martinezes that Mr. Martin did not own the camper. According to the Plaintiffs, they told her she could have the camper if she came back the next morning. Plaintiffs state that she never returned.

Instead, on the next day, Mr. Martin contacted Plaintiffs and told them that he would pay his overdue rent. Mrs. Martinez agreed to meet Mr. Martin. He arrived at Plaintiffs' home escorted by Defendant law enforcement officers Key and Ulrich. According to Plaintiffs, however, the officers were hiding. When Mr. Martin approached the door, Mrs. Martinez answered the door and asked Mr. Martin to put the money on the doorstep. Mr. Martin placed an envelope on the doorstep. Mrs. Martinez and her son then exited the Martinez home to get the camper out of the garage. Plaintiffs state that, at that time, officers Key and Ulrich drove onto the Martinez property in "raid like fashion." Plaintiffs also state that the officers did not have a warrant to enter the property.

When Defendant law enforcement officers came onto the property, Mrs. Martinez apparently went into the rental unit. Plaintiffs state that she did this because she was concerned that Defendants would arrest her. Plaintiffs assert that Defendant Key followed Mrs. Martinez into the rental unit and forcibly removed her from that house by handcuffing her. Plaintiffs also state that Mr. Martinez was detained though he was not handcuffed. Plaintiffs were then detained on

their property for approximately two hours. During that time, Defendant law enforcement officers assisted Mr. Martin in retrieving his camper and the money he had left on the doorstep which turned out to be only thirty dollars.

Plaintiffs report that Mrs. Martinez' wrist was injured from being handcuffed. Plaintiffs' claims include a Fourth Amendment claim for the unlawful entry of their property without a warrant, a Fourth Amendment claim for the unreasonable seizure of their persons, and state tort claims including false imprisonment, wrongful arrest, assault, battery, and deprivation of federal and state constitutional rights.

According to Defendants, the facts regarding Mr. Martin's rental of property from the Martinez' did occur. He did move out and leave the camper. Defendants state that the Martinez' blocked access to the camper with other vehicles then hid the camper in the garage. After three weeks of attempting to retrieve the camper, Ms. Martin reported to the Bernalillo County Sheriff's Department on September 14, 2000 that the camper was stolen. On September 15, 2000, Mr. Martin and Ms. Martin arranged to meet with the Martinezes to find out what had happened to the camper. Defendants contend that Ms. Martin contacted Defendant Ulrich because she was concerned for her own and Mr. Martin's safety. Defendants allege that Defendant Ulrich decided that he and Defendant Kay should escort the Martins to the Plaintiffs' property because Ulrich was concerned about the Martins' safety. He decided, however, that it would be best if he and Defendant Key did not approach the Plaintiffs with the Martins but waited nearby instead.

Defendants state that, when Mr. Martin spoke with Mrs. Martinez on the property that day, there was some argument between them about whether Mr. Martin owed any money. However, after an exchange of some money, Mrs. Martinez went to the vacant rental unit, opened the door to

the garage, and revealed the camper. Mr. Martin then used a cellular phone to inform Defendant Ulrich that the stolen camper had been located on the property. Defendants report that Defendants Ulrich and Key, in response to this information, then proceeded onto the Plaintiffs' property and into the garage of the rental unit in order to check the vehicle identification number on the trailer.

Defendants maintain that the camper was sitting in public view in the open garage when they arrived on the property. Defendant Key identified herself as a law enforcement officer and began "gathering information about the trailer." Defendants assert that while Key was "gathering the VIN number from the trailer" in the garage, Mrs. Martinez became belligerent and was walking around behind Key, and Key thus requested that Mrs. Martinez leave the garage. "Instead, Mrs. Martinez fled into the vacant house." Defendants explain that Defendant Key was concerned that Mrs. Martinez was attempting to retrieve a weapon so he followed her into the vacant house, handcuffed her, and escorted her to a patrol car. According to the affidavit of Mrs. Martinez, Key said something to her about arresting her, she was afraid, so she went into the rental house. She states that Key followed her into the house and placed her in handcuffs. Defendants believe that this was not an arrest but a legitimate investigatory detention in an effort to calm Mrs. Martinez and obviate any officer safety concerns.

According to Defendants, at about the time Mrs. Martinez was being placed in a patrol car, Mr. Martinez came out of the Martinez residence to see what was happening. Defendants state that Ulrich told Mr. Martinez to keep his distance.

Defendants allege that a property crimes detective confirmed that Plaintiffs had taken the camper without authority, that the camper had been reported stolen, and that the camper had been located on Plaintiffs' property before Defendants Ulrich and Key entered the property. The

detective also informed Defendants that they had probable cause to arrest the Plaintiffs. However, rather than arrest Plaintiffs, the matter was turned over to the District Attorney for a determination as to whether an indictment should be handed down.

**LEGAL STANDARDS**

The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law. Holland v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v. City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993). For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity. Hinton, 997 F.2d at 779. When a defendant asserts a qualified immunity defense, Plaintiff bears the initial burden of making two showings. Holland, 268 F.3d at 1185. First, a plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right. Id. The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right. Id. If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred. Id. at 1186. The contours of the right must have been sufficiently clear at the time such that a reasonable official would have understood that his or her conduct was unlawful. Id. A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Camfield v. City of Oklahoma City, 248 F.3d 1214, 1228 (10th Cir. 2001). If a plaintiff makes the required

showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment. Hinton, 997 F.2d at 779.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v. Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v. Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v. Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001).

**DISCUSSION**

**I.    SECTION 1983 CLAIMS AGAINST DEFENDANTS KEY AND ULRICH**

Defendants Key and Ulrich assert a defense of qualified immunity. As noted above, Plaintiffs, in order to survive these Defendants' motion, must show that the Defendants' alleged

actions violated the Plaintiffs' constitutional rights and that these rights were clearly established at the time of the alleged conduct.

### A.    Count I:  Unlawful Entry

Count I of Plaintiffs' Complaint alleges that their Fourth Amendment right to be free from unlawful searches and seizures was violated when Defendants Key and Ulrich entered Plaintiffs' property without a warrant and without consent.  Defendants argue that they did not need a warrant to enter Plaintiffs' property.  Viewing the facts in a light most favorable to Plaintiffs, I find that Plaintiffs have failed to make the initial showing that Defendants' conduct in entering Plaintiffs' property without a warrant at the time in question was a violation of Plaintiffs' Fourth Amendment rights.

The Fourth Amendment protects people rather than places, and "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.  But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."  Katz v. United States, 389 U.S. 347, 351 (1967).

Defendants argue that they were not required to obtain a warrant to enter Plaintiffs' property because the trailer at issue was in plain sight on Plaintiffs' property.  This Court is unwilling to find that a warrantless entry becomes lawful by the mere act of a person opening a door to a home, garage, or other structure because that person has knowingly exposed something to the public and no longer seeks privacy.  A trailer in a garage on a person's private property is not comparable to a car in a motel parking lot.  See United States v. Ludwig, 10 F.3d 1523 (10th Cir. 1994).

In DiCesare v. Stuart, 12 F.3d 973 (10th Cir. 1993), law enforcement officers noted on private property some starving horses that were barely able to walk. The animals were seized, given veterinary care and treatment, and then sold to cover the cost of their treatment. The Tenth Circuit found that, while there was no doubt that officers had probable cause to seize the horses, they were required to obtain a warrant before doing so. Id. at 977-78. The court iterated that the plain view doctrine allows an immediate warrantless seizure if an item is in plain view, the police officer is lawfully located in a place from which the item can plainly be seen, the officer has a lawful right of access, and it is immediately apparent that the seized item is incriminating on its face. Id. at 978. The court found that Defendants did not meet the requirement that they have lawful right of access to the horses even if the officers had been able to view the horses from a public place. Id. at 979. The court held that, "even when a seizable item can plainly be seen on premises belonging to a criminal suspect, the authorities may not make a warrantless trespass and seizure absent exigent circumstances." Id.

In this case, the trailer was in plain view when Plaintiff Mrs. Martinez opened the garage door. Additionally, Defendants were lawfully located in a place from which the trailer could be seen because the trailer was visible from Defendants' position on the public road once the garage door was open. However, Defendants did not have a lawful right of access to the garage, and it was not immediately apparent that the trailer was incriminating on its face. The plain view of the trailer was not sufficient, standing alone, to give Defendants a right to enter Plaintiffs' property without a warrant. Thus, even if Defendants had a plain view from a public place of the trailer on Plaintiffs' property, Defendants were not free to enter Plaintiffs' property without a warrant absent exigent circumstances.

Defendants argue that exigent circumstances did exist because Defendants had witnessed a felony in progress and had a present need to keep the peace.[1]  According to Defendants, the "felony in progress" was the Plaintiffs' possession of the trailer, and Defendants "witnessed" this because Mr. Martin called them on a cellular phone and told them that Plaintiffs had the trailer.

The existence of emergency circumstances may in appropriate cases make a warrantless search constitutional if probable cause exists.  United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir. 1998).  Defendants cite no authority for the proposition that police officers witnessing a felony in progress have, by definition, exigent circumstances sufficient to enter private property without a warrant.  Nor has the Court found any authority that a felony in progress is a per se exigent circumstance.  Further, this Court doubts that Defendants "witnessed" something when it was reported to them by a private citizen on a telephone.  Finally, the Court does not believe that possession of stolen or embezzled property is a "felony in progress."  Only a plainly incompetent police officer could reasonably believe that these circumstances, even if they are assumed to have existed at the time, rise to the level of exigent circumstances sufficient to justify a warrantless.

Defendants make much of the fact that the garage in which the trailer was stored was an unoccupied dwelling on Plaintiffs' property that Plaintiffs normally used as a rental unit.  Defendants argue that Plaintiffs had no reasonable expectation of or right to privacy at this dwelling because it is not within the curtilage of the home and, therefore, must be treated comparably with an open field.  Plaintiffs conversely argue that this dwelling is part of the curtilage of the home.

---

[1]Defendants actually raised this argument for the first time in their Reply brief.  Because the Court decides that the argument is without merit, Plaintiffs are not prejudiced in not being provided an opportunity to respond to this argument.

A trailer in a garage is not comparable to marijuana growing in an open field. See Oliver v. United States, 466 U.S. 170 (1984). I find that the garage attached to the rental unit on Plaintiffs' property is within the curtilage of Plaintiffs' home. The extent of the curtilage of a home is determined by factors that bear upon whether an individual may reasonably expect that the area in question should be treated as the home itself. U.S. v. Swepston, 987 F.2d 1510 (10th Cir. 1993). The factors a Court should consider include the proximity of the area to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses of the area, and the steps taken by the resident to protect the area from observation by persons passing by. U.S. v. Long, 176 F.3d 1304 (10th Cir. 1999).

Plaintiff has presented evidence indicating that the rental unit is less than 70 feet from Plaintiff's home. Affidavit of Celia Martinez ¶ 5. Plaintiff has also presented evidence that the rental unit, along with other residences on the property including Plaintiffs' home, are all enclosed by a wall. Plaintiffs' Exhibits 1B - 1H. Parties do not dispute that the normal use of the rental unit in the past had been as a residence to rent to others. Parties also agree that, at the time of the events at issue in this case, the rental unit was unoccupied. Plaintiff Celia Martinez avers that the rental unit has been used by Plaintiffs as storage when it was unoccupied. Parties do not dispute that, at the time of the events in this case, the trailer at issue was stored in the garage of the rental unit. Affidavit of Celia Martinez ¶ 5. The front of the rental unit is visible from a public road. Plaintiffs' Exhibit 1F. The interior of the rental unit and the garage are not routinely visible from the public road, but the interior of the garage would be visible from the road upon opening the garage door. Plaintiffs' Exhibit 1F. Based on the proximity of the rental unit garage to Plaintiffs' home, the fact that it was used as personal storage by Plaintiffs during the time in question, the

fact it was within the same wall enclosing the other dwellings on the property, and the fact that the interior of the unit was as private as any private home, I find that the rental unit was within the curtilage of the home.

Even if the garage attached to the rental unit on Plaintiffs' property were not within the curtilage of their home, the area would be protected under the Fourth Amendment. As noted above, the Fourth Amendment protects persons, not places. There are areas in which a person will have a reasonable expectation of privacy that are not within the curtilage of that person's home. For instance, a person may have a reasonable expectation of privacy in a public telephone booth. See Katz v. United States, 389 U.S. 347 (1967). A person also will likely have a reasonable expectation of privacy in his or her business premises. See Dow Chemical Co. v. United States, 476 U.S. 227 (1986); United States v. Anderson, 43 F.3d 531 (10th Cir. 1994); United States v. Bute, 43 F.3d 531 (10th Cir. 1994); United States v. Swart, 679 F.2d 698 (7th Cir. 1982). Additionally, a person usually has a reasonable expectation of privacy within a storage facility. See United States v. Cannon, 264 F.3d 875 (9th Cir. 2001); United States v. Van Damme, 48 F.3d 461 (9th Cir. 1995); United States v. Santa Maria, 15 F.3d 879 (9th Cir. 1994); United States v. Hendrickson, 940 F.2d 320 (8th Cir. 1991); United States v. Lyons, 898 F.2d 210 (1st Cir. 1990); United States v. Boden, 854 F.2d 983 (7th Cir. 1988); United States v. Thornley, 707 F2d 622 (1st Cir. 1983). The Supreme Court has found that areas other than the curtilage of a home are entitled to Fourth Amendment protection. See Dow Chemical Co., 476 U.S. 227. Thus, not every place or area that is not within the curtilage of one's home is, by definition, an open field in which a person has no reasonable expectation of privacy.

Surely, if this event had occurred at a similar property across town from Plaintiffs' home, Defendants would not argue that Plaintiffs, while within their unoccupied single family rental property being used as storage, had no reasonable expectation of privacy such that law enforcement officers would be free to enter the property, detain Plaintiffs, and conduct a search without a warrant. This Court will not find that Plaintiffs had a lesser right of privacy in an unoccupied rental unit on the same property as their home than they would have in a similar property not located in proximity to their home. The Court believes that Plaintiffs had a right to privacy and a reasonable expectation of privacy in their rental unit at least as great as what they would have in a storage facility or in their business premises not generally open to the public.

Defendants urge that the entry of Plaintiffs' property was lawful because Defendants, at the time of entry, had sufficient probable cause to arrest Plaintiffs. Law enforcement officers may make an arrest based on probable cause without a warrant in any public place. United States v. Santana, 427 U.S. 38 (1976). It appears that the warrant requirement for an arrest applies very narrowly to the interior of a dwelling, and does apply when a criminal suspect is in plain view, even within the curtilage of a dwelling. Id.

Defendants had probable cause to arrest Mrs. Martinez at the time they entered Plaintiffs' property. Defendants had a report from Mr. Martin of a stolen trailer, were told by Mr. Martin that the trailer was on Plaintiffs' property, had a clear view of the trailer in the garage of the rental unit from their vantage point on the public road, and had watched Mrs. Martinez take Mr. Martin to the rental unit and open the garage to reveal the trailer. Even though, as Plaintiffs point out, the trailer had been embezzled rather than stolen, embezzlement is still a crime for which law enforcement officers may make a lawful arrest.

13

Defendants therefore lawfully entered Plaintiffs' property for the purpose of effecting the arrest of Mrs. Martinez. The fact that the detention of Mrs. Martinez did not occur immediately upon entry does not render the entry unlawful. Nor does it render the entry unlawful that the officers, after further investigation, decided not to formally arrest Mrs. Martinez.

Viewing the facts in a light most favorable to Plaintiffs, I find that Defendant Key and Ulrich did not violate Plaintiffs' Fourth Amendment rights when they entered Plaintiffs' property because, at the time of entry, Defendants had sufficient probable cause to arrest Mrs. Martinez, Mrs. Martinez was in plain view outside or within the garage of the rental unit at the time the officers entered the property, and it was lawful for the officers to enter this property for the purpose of effecting the arrest of Mrs. Martinez.

Even if the entry of Plaintiffs' property was a violation of Plaintiffs' Fourth Amendment rights, Plaintiffs have not shown that this right was clearly established at the time such that a reasonable officer would know that the entry was unlawful. As noted above, law enforcement officers may enter private property to make an arrest for which probable cause exists. The law does not clearly establish that such an entry is unlawful unless the entry is into the interior of a person's dwelling. Therefore, Defendants Key and Ulrich are entitled to summary judgment on the basis of qualified immunity with regard to Count I of Plaintiffs' Complaint.

### B. Count II: Seizure and Arrest Without Probable Cause

Plaintiffs' Complaint alleges that both Mr. and Mrs. Martinez were unlawfully arrested without probable cause in violation of the Fourth Amendment. Defendants Key and Ulrich concede that Mrs. Martinez was seized for Fourth Amendment purposes, but dispute whether Mr. Martinez was arrested. Plaintiffs' response to the motion makes no argument and provides no

evidence of any detention of Mr. Martinez. Thus, Defendants Key and Ulrich are entitled to summary judgment on Count II insofar as Plaintiffs are making a claim for any detention of Mr. Martinez.

As for the detention of Mrs. Martinez, I find that Plaintiffs have failed to make the initial showing of a violation of their Fourth Amendment rights.[2] Under the Fourth Amendment, a person has a right to be free from unreasonable seizure. As noted above, at the time Mrs. Martinez was detained, Defendants Key and Ulrich had probable cause to arrest her. Therefore, the detention of Mrs. Martinez was lawful and was not a violation of her Fourth Amendment rights.

Because I find that the detention of Plaintiff was lawful based on probable cause, I need not address Defendants' argument that the detention was also lawful to assure officer safety.

Even though Plaintiffs' detention was lawful, Plaintiff may still have a claim for use of excessive force if the force used to detain her was not reasonable under the Fourth Amendment. Ross v. Neff, 905 F.2d 1349, 1355 (10th Cir. 1990). Plaintiffs have failed to establish that Defendants violated Mrs. Martinez' Fourth Amendment rights by use of excessive force to detain her.

A claims of excessive force is analyzed by determining whether an officer's actions were objectively reasonable in light of surrounding facts and circumstances. Allen v. Muskogee, Oklahoma, 119 F.3d 837 (10th Cir. 1997). As noted previously, Defendants Key and Ulrich had probable cause to arrest Mrs. Martinez when they detained her. While Defendants did not

---

[2]As noted earlier, Defendants do not dispute that Mrs. Martinez was detained for Fourth Amendment purposes.

ultimately formally arrest Mrs. Martinez, they did detain her in a police vehicle after placing her in handcuffs. Plaintiffs claim that the use of handcuffs to detain Mrs. Martinez was unreasonable because Mrs. Martinez offered no resistance. Even assuming that Mrs. Martinez did not physically resist detention, Plaintiffs offer no support, and this Court has found none, for the argument that the use of handcuffs alone can amount to excessive force when officers are lawfully detaining someone for whom they have probable cause to make an arrest. This Court does not find that the means of detaining Mrs. Martinez used by Defendants Key and Ulrich were unreasonable.

Even if the means of detaining Mrs. Martinez were unreasonable such that Defendants used excessive force, Plaintiffs have failed to establish that the contours of that right were clearly established at the time of the incident such that a reasonable officer would have known that the conduct was unlawful. Plaintiffs have offered no Supreme Court, Tenth Circuit, or other circuit court opinions finding that the use of handcuffs to effect a lawful detention is unreasonable. Thus, Defendants Key and Ulrich are entitled to summary judgment on Count II of Plaintiffs' Complaint on the grounds of qualified immunity.

## II. SECTION 1983 CLAIMS AGAINST BERNALILLO COUNTY

Qualified immunity is not available as a defense to a municipal entity such as Bernalillo County. Camfield, 248 F.3d at 1228. However, a municipality cannot not be held liable for the actions of its employees under the theory of *respondeat superior*. Id. Instead, to establish municipal liability, a plaintiff must show that the unconstitutional actions of an employee were representative of a municipal policy or custom or were carried out by an official with final policy-making authority with respect to the challenged action. Id. at 1229. When a plaintiff attempts to

show municipal liability on the basis of a municipal policy or custom, he or she must establish a direct causal link between the policy or custom and the employee conduct. <u>Hinton</u>, 997 F.2d at 782.

Defendants' Motion for Summary Judgment urges that Bernalillo County is entitled to summary judgment on Plaintiffs' Section 1983 claims because Plaintiff cannot come forward with sufficient evidence to support a claim for municipal liability. Plaintiffs' response to Defendants' motion did not address the issue of municipal liability, and there is no evidence in the record relevant to the issue of municipal liability. Thus, Defendant Bernalillo county is entitled to summary judgment on Count I and Count II of Plaintiffs' Complaint.

## III.    STATE TORT CLAIMS AGAINST ALL DEFENDANTS

Defendants' Motion for Summary Judgment maintains that all Defendants are entitled to judgment on Plaintiffs' claims under the New Mexico Tort Claims Act because Plaintiffs cannot put forth sufficient evidence to raise a genuine issue of material fact regarding each of the elements of each of these claims. The allegations in Plaintiffs' Complaint are general and state that the actions of Defendants deprived Plaintiffs of federal and state constitutional rights, and constituted false imprisonment, wrongful arrest, and assault and battery. Complaint ¶ 32. It is Plaintiffs' burden, then, to come forward with sufficient evidence to raise a genuine issue of material fact as to each of the elements of each of their claims made under the New Mexico Tort Claims Act.

The arguments in Plaintiffs' response to Defendants' Motion for Summary Judgment did not address the issue of the state tort claims. This Court has already granted summary judgment to Defendants regarding Plaintiffs' claims for unlawful entry and unlawful seizure under the

Fourth Amendment. By extension, Defendants are entitled to summary judgment on Plaintiffs' state tort claims to the extent they are based on a violation of these federal rights.

With regard to Plaintiffs' remaining state tort law claims, the Court recognizes that Plaintiffs presented evidence with their argument that may, either standing alone or in combination with all of the evidence in the record, raise a genuine issue of material fact with regard to the elements of these claims. Plaintiffs' failure to provide legal argument on the issue does not entitle Defendants to summary judgment on these claims. Therefore, all Defendants are entitled to summary judgment on any and all state tort claims based on a violation of Plaintiffs' rights under the federal constitution. However, Defendants are not entitled to summary judgment, based on the record at this time, on any other state tort claims asserted by Plaintiffs.

## IV.    REMAND OF REMAINING STATE TORT CLAIMS TO STATE COURT

As I have dismissed all of Plaintiffs' federal claims on summary judgment, only state tort claims remain. I decline to exercise supplemental jurisdiction over the state claims and remand these to the state court from which this action was removed. See Westinghouse Credit Corp. v. Thompson, 987 F.2d 682 (10th Cir. 1993) (District court did not abuse its discretion in remanding pendent state claims); Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472 (10th Cir. 1990) (When federal claim is dismissed before trial, the state law claim will generally be dismissed as well); Troconis v. Lucent Technologies, Inc., 160 F.Supp2d 150, 158 (D. Mass. 2001) ("The case for remand is compelling when the foundational federal claims have been dismissed early in the litigation. . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties. . .").

## CONCLUSION

Considering the ages of the Plaintiffs and the factual circumstances of this case, the conduct of Defendants Ulrich and Key towards Plaintiffs was extremely unprofessional, to put it mildly. Notwithstanding my personal views over the objectionable manner with which Plaintiffs were treated by Defendants Ulrich and Key, I am required to follow what I believe to be controlling United States Supreme Court and Tenth Circuit precedent.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Docket No. 21) is GRANTED to all Defendants as to Counts I and II of Plaintiffs' Complaint and as to Count III insofar as the state tort claims are for violations of federal constitutional rights.

IT IS FURTHER ORDERED that the remaining state law claims are REMANDED to the Second Judicial District Court, State of New Mexico, County of Bernalillo, Cause No. CV-2000-11322.

_____
UNITED STATES DISTRICT JUDGE